

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

October 3, 2023

**VIA ECF**

The Honorable Susan D. Wigenton
United States District Judge
Martin Luther King, Jr. Building &
   United States Courthouse
50 Walnut Street
Newark, New Jersey 07102

RE:   *Ankur Agarwal v. United States*
      Civ. No. 23-2479; Crim. No. 19-770

Dear Judge Wigenton:

The Government submits this letter brief in lieu of a more formal submission in response to Defendant Ankur Agarwal's ("Agarwal") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.   In the motion, Agarwal claims he was deprived of his Sixth Amendment right to the effective assistance of counsel, from both his former defense attorney, Samuel M. Braverman, Esq. (hereinafter, "Braverman") and his former appellate counsel, Tor B. Ekeland, Esq. (hereinafter, "Ekeland").   For the reasons set forth below, this Court should deny the motion without an evidentiary hearing and decline to issue a certificate of appealability.

I.   **Background**

A. **Facts**

In approximately February 2017, Agarwal began to repeatedly access the computer networks of his former employer, Company One, without authorization.   Presentence Investigation Report ("PSR") ¶¶ 17-18.   To do so, he physically trespassed onto Company One's premises and installed keystroke-recording devices ("keyloggers") on employees' computers.   The keyloggers allowed Agarwal to surreptitiously capture employees' login credentials, which Agarwal then used to remotely access the company's network. PSR ¶ 18.   Once Agarwal gained unauthorized access to the network, he installed a computer code that enabled him to steal large volumes of data, including information

relating to an emerging technology that Company One was developing (the "Emerging Technology"). *Id.*

Similarly, on multiple occasions in 2017, Agarwal repeatedly accessed the computer networks of another company for which he previously worked, Company Two, without authorization. PSR ¶¶ 17, 35. As with Company One, Agarwal physically trespassed onto Company Two's premises, installed keyloggers to capture the login credentials of Company Two employees, and then used the credentials to remotely access Company Two's network. PSR ¶ 35. After gaining unauthorized access, Agarwal stole Company Two's data, including information relating to the Emerging Technology, which Company Two also was working to develop. *Id.*

Agarwal's theft extended beyond data relating to the Emerging Technology. He also exfiltrated employees' personal information, such as their passwords, emails, and salary information. *See, e.g.,* PSR ¶¶ 2-3. With respect to an executive employee at Company Two ("T.K."), Agarwal exfiltrated and printed out a hard copy of the employee's compensation plan and retirement binder, which contained T.K.'s name, date of birth, and address. PSR ¶ 40.

Agarwal also committed identity theft. To maintain his unauthorized access to Company Two's premises, Agarwal used T.K.'s personal identifiers to submit a fraudulent application for an employee-identification card. PSR ¶ 43. Agarwal caused the fraudulent card to be issued in his (Agarwal's) mother's name. PSR ¶ 43. Once in possession of that fraudulent identification card, Agarwal used it to continue to trespass onto Company Two's premises. *See* PSR ¶ 39.

During the course of his intrusions, Agarwal eavesdropped on Company One's efforts to respond to his own intrusions. On April 3, 2018, he dialed into a Company One conference call regarding his breaches and documented the company's discussions regarding the significant efforts that would be needed to respond. *See* PSR ¶ 29.

Agarwal's scheme continued unabated for over a year, from approximately February 2017 to April 2018. Agarwal did not stop trespassing onto the Victims' premises and stealing their information until he got caught. *See* PSR ¶¶ 11, 20-27, 39. On April 19, 2018, security personnel at Company One observed and approached an unknown individual in a hooded sweatshirt, who was later identified as Agarwal. PSR ¶ 20. Agarwal engaged in a physical altercation with one of the security officials, causing a minor injury to his elbow, and then fled the scene on foot. PSR ¶ 21.

After fleeing Company One, Agarwal traveled to Company Two. *See* PSR ¶ 39. He trespassed onto the premises, carried items out of the building,

and drove off in a vehicle that belonged to a Company Two employee, who had not authorized Agarwal to take his car. *Id.* Agarwal later returned the stolen vehicle to Company Two, reentered the building, and then left again, this time in different attire. *Id.*; *see also* PSR ¶ 54 (observing that Agarwal deliberately changed his clothes and discarded his jacket). Agarwal did more than just change his clothes to evade identification and capture. After leaving Company Two, Agarwal called 9-1-1 and filed a false police report. He told authorities that his own car had been stolen—which was not true—so that when his car was discovered at Company One, it would not link him to the scene. *See* PSR ¶ 25. Agarwal was arrested shortly thereafter.

Later investigation revealed that Company One and Company Two were not Agarwal's first victims. Agarwal previously worked as a security engineer at an international defense company. PSR ¶ 102. In May 2005, the company determined that Agarwal had gained access to the accounts of over one thousand company employees. When Agarwal was confronted by company officials, Agarwal apologized for his conduct and resigned. PSR ¶ 102.

### B. Procedural History

On October 22, 2019, Agarwal pleaded guilty to two counts of obtaining information from protected computers, in violation of 18 U.S.C. § 1030(a)(2), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Agarwal pleaded guilty knowing he faced up to 12 years' imprisonment, the District Court had discretion to impose that sentence after considering the advisory Guidelines, and he could not withdraw his plea if he was unhappy with his sentence. He also agreed with the Government that the Guidelines loss calculation would be disputed at sentencing. On September 3, 2020, this Court sentenced Agarwal to 94 months' imprisonment and three years' supervised release. When it calculated the applicable Guidelines range at sentencing, this Court applied: a 16-level increase because this Court found there were Computer Fraud and Abuse Act losses above $1.5 million; a 2-level increase for production of an unauthorized access device; and a 2-level increase for obtaining personal information. *See* Exhibit 1, Sentencing Transcript at 40:14-44:3.

On September 15, 2020, Agarwal appealed to the Court of Appeals for the Third Circuit ("Third Circuit"). On February 3, 2022, after full merits briefing, the Third Circuit affirmed Agarwal's conviction. *See* Opinion filed on April 1, 2022, at Docket No. 19-cr-770, D.E. 69. The Court rejected his claim that his guilty plea was unknowing, and it enforced the appellate waiver in the plea agreement insofar as Agarwal attacked his sentence.

On May 4, 2023, Agarwal timely filed a *pro se* § 2255 motion. *See* Docket No. 2: 23-cv-2479, D.E. 1. On May 11, 2023, the Clerk of Court administratively terminated his case, and on June 15, 2023, Agarwal filed an amended *pro se*

3

§ 2255 motion.  *See* D.E. 4.  Agarwal asserts that his prior defense attorney and prior appellate counsel provided ineffective assistance of counsel.

## II.    Legal Standard

A motion under 28 U.S.C. § 2255 is a collateral attack on the legality of a sentence.  *See Jones v. Hendrix, 599 U.S. 465, 473 (2023).*  Section 2255(a) provides that a federal prisoner may challenge his or her sentence only if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence "is otherwise subject to collateral attack."  The Supreme Court has construed the statute narrowly, such that a claim is cognizable only if there was a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962).

As relevant here, ineffective-assistance-of-counsel claims are cognizable under § 2255 only if they rise to the level of a Sixth Amendment violation.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009).  A defendant must therefore show *both* that: (1) counsel's performance fell below an objective standard for reasonableness under prevailing standards of professional norms; and (2) that counsel's failures prejudiced him or her.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sanders,* 165 F.3d 248, 250 (3d Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Under the first *Strickland* prong, Agarwal must demonstrate that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland,* 466 U.S. at 687.  In other words, Agarwal must show that counsel's performance fell below "prevailing professional norms" and was "outside the wide range of professionally competent assistance."  *Id.* at 690.  A court reviewing counsel's performance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy."  *Id.* at 689.  Indeed, upon review, the court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

When alleging ineffectiveness of appellate counsel, it is not enough to simply show that appellate counsel failed to raise a colorable claim.  *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (nothing in the Constitution imposes a duty on counsel to raise every colorable claim); *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (it is well-established that counsel decides which issues to pursue

on appeal, and there is no duty to raise every possible claim).    Rather, a defendant must show that the omitted claim was so clearly meritorious that no reasonable counsel would have failed to assert it.  *See Besser v. United States*, Civil No. 09-948, 2013 WL 308951, at *27 (W.D. Mich. Jan. 25, 2013) ("Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal."); c*f. See United States v. Scripps*, 961 F.3d 626, 634 (3d Cir. 2020) (remanding for evidentiary hearing because, "while it would be highly unusual for counsel to omit such a clearly meritorious argument, nonetheless counsel may have had reasons for doing so").

Under the second *Strickland* prong, Agarwal also must show that he suffered prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability," in turn, is "a probability sufficient to undermine confidence in the outcome" of the case. *Id.*    The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  Given that standard, in analyzing the prejudice prong, a court must consider the strength of the evidence.  *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999).  When there was overwhelming evidence, the defendant usually cannot show that he was prejudiced by counsel's mistakes unless he or she can provide "a considerable amount of new, strong evidence to undermine" his conviction.  *Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010).

If either *Strickland* prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 697. Notably, nothing prevents a court from analyzing whether the defendant has proven prejudice, and if he has not, rejecting the claim without ever analyzing counsel's performance. *Id.* ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *see Smith v. Robbins*, 528 U.S. 259, 286, n.14 (2000).

District courts must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  This determination involves a two-pronged inquiry. First, the district court must consider all nonfrivolous factual claims as true.  *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021); *see United States* v. *Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) ("In considering a motion to vacate a defendant's sentence, the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."). "Second, it must 'determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel.'" *Arrington*, 13 F.4th at 334 (quoting *United States v. Dawson*, 857 F.2d 923, 927-28 (3d Cir. 1988)).  If a § 2255 motion

"clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *Dawson*, 857 F.2d at 928.   As the Third Circuit has explained, "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." *Campbell* v. *Burris*, 515 F.3d 172, 184 (3d Cir. 2008) (quoting *Mayberry* v. *Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)).   *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (explaining that the court is not required to accept or further investigate "vague and conclusory allegations").

### III.    Argument

Agarwal presents numerous claims of ineffective assistance of counsel. First, with respect to his former appellate counsel, Ekeland, Agarwal brings the following claims:

- Ground 1: failing to find proper case law regarding loss calculations under the Computer Fraud and Abuse Act ("CFAA") which resulted in the Third Circuit not reviewing the merits of the CFAA loss arguments
- Ground 2: failing to argue regarding a Guidelines enhancement related to production of an unauthorized access device
- Ground 3: failing to argue regarding a Guidelines enhancement for personal information related to intent to obtain personal information

Second, with respect to his former defense attorney, Braverman, Agarwal brings the following claims:

- Ground 4: advising Agarwal to sign a waiver of indictment without Agarwal realizing there was a Speedy Trial Act violation (for failing to bring an indictment within 30 days)
- Ground 5: not advising Agarwal of his "mandatory" right to dismissal of his charges due to the Speedy Trial Act violation.

*See* Docket Civ. No. 23-2479, D.E. 4 ("Motion").

In response to Agarwal's claims, Agarwal's former defense attorney and appellate counsel have submitted sworn declarations. *See* Exhibit 2 for Braverman's Declaration and Exhibit 3 for Ekeland's Declaration. Their declarations show that many of Agarwal's allegations are either blatantly false or without merit because counsel had specific strategic reasons for pursuing or not pursuing certain arguments or positions on behalf of Agarwal.   The claims against his former defense attorney will be discussed first below, followed by the claims against his appellate counsel.

As set forth in greater detail below, each of Agarwal's claims lacks merit.

6

Even assuming *arguendo* that all of Agarwal's allegations are true, Agarwal is unable to satisfy the *Strickland* test for each claim.  The "motion and the files and records of the case conclusively show" that Agarwal's claims are meritless. 28 U.S.C. § 2255(b).  Accordingly, this Court should deny Agarwal's § 2255 motion without an evidentiary hearing and decline to issue a certificate of appealability.

### A. Braverman Was Not Ineffective for Advising Agarwal to Sign a Waiver of Indictment at His Plea Hearing nor Failing to Bring a Speedy Trial Act Motion

Grounds 4 and 5 of Agarwal's Motion are intertwined—essentially, Agarwal alleges that Braverman did not advise him of a Speedy Trial Act ("STA") right to "mandatory" dismissal of all charges and that he signed a waiver of indictment without knowing this "right."

> i.    *Agarwal Knowingly and Voluntarily Waived His Right to an Indictment at His Plea Hearing*

At Agarwal's plea hearing, while not under the influence of any medication or substance that would affect his ability to understand the significance of entering a plea of guilty and under oath (*see* Exhibit 4, Plea Hearing Transcript 5:22-6:1), Agarwal indicated that his lawyer had answered all his questions to his satisfaction (*see* Exhibit 4 at 6:2-12) and that he (Agarwal) signed a waiver of indictment (*see* Exhibit 4 at 7:3-11).  During the plea hearing, Your Honor explicitly discussed the waiver of indictment with Agarwal, and inquired as to whether Agarwal had discussed his right to be indicted with his attorney:

> THE COURT: So I also have in front of me an application for permission to enter a plea of guilty, but let me just inquire first if you have spoken to Mr. Braverman regarding the fact that you have a right to have this matter presented before a grand jury; that grand jury would determine if in fact you should be indicted and they would either return an indictment or they would determine that no indictment should be returned and they would no bill the matter.  Have you discussed that with Mr. Braverman?
>
> THE DEFENDANT: Yes, Your Honor, I have.
>
> THE COURT: And as you stand here today is it your intention to voluntarily waive your right to be indicted in this case?
>
> THE DEFENDANT: Yes, Your Honor.

Exhibit 4 at 6:14-7:2.

Agarwal clearly stated that he had discussed what the waiver of indictment meant with his lawyer. Braverman also indicates he had discussed the waiver of indictment and the differences between an information and indictment with Agarwal. *See* Exhibit 2 at ¶ 6.

Additionally, Agarwal reviewed, signed, and submitted an application for permission to enter a guilty plea ("Rule 11 form") in this case. D.N.J. Crim. No. 19-770, D.E. 30. In that Rule 11 form, Agarwal affirmed that Braverman explained to him his constitutional right to be charged by indictment of a grand jury and the legal process that would entail. After being advised of that right, Agrawal affirmed that his "decision to waive indictment by grand jury is made knowingly and voluntarily..." *Id.*, at ¶ 14. Further, as Braverman states in his Declaration, Agarwal never indicated he wanted to be charged by Indictment and Braverman was in frequent communications with Agarwal about the status of his plea negotiations with the Government. *See* Exhibit 2 at ¶ 8.

> ii.  *Speedy Trial Act Decisions Are Within Counsel's Purview and There Is No Mandatory Right of Dismissal*

With respect to Agarwal's assertion concerning his STA rights, he is not entitled to relief on his 2255 motion because his former defense attorney was not ineffective and Agarwal cannot show prejudice. Braverman determined that filing a STA motion would likely not result in a dismissal with prejudice.[1] *See* Exhibit 2 at ¶ 7. Therefore, Braverman determined, as a strategic matter, that it was better to focus on securing an advantageous outcome for Agarwal through plea negotiations. There is no "mandatory" dismissal of all charges—rather, if there is a STA violation, a defendant would be able to move to dismiss all charges. Despite such a violation, a defendant may choose not to bring an STA motion, for strategic reasons, including how such an action would appear to the prosecutor especially if plea negotiations were ongoing, and the likelihood of success of such a motion. Counsel was not ineffective for exercising sound strategic decision-making, and Agarwal cannot show prejudice.

In complaining that he was advised to sign a waiver of indictment without being advised of his "mandatory" right to dismissal, Agarwal is essentially

---

[1] Prior to Agarwal's guilty plea to an Information on October 22, 2019, the Court entered approximately 9 "ends of justice" STA continuances. *See* D.E. 7, 9, 10, 11, 15, 19, 23, 25, 26. In this case, more than 30 non-excludable days may have passed between Agarwal's initial appearance on April 26, 2018 and October 22, 2019, the day that Agarwal waived Indictment and entered a guilty plea to an Information. 9 days elapsed in June and July 2018 (from the period of June 26, 2018 through July 4, 2018) and 36 days in March and April 2019 (from the period March 4, 2019 through April 8, 2019), for a total of approximately 45 days of non-excludable time between the initial appearance and the entry of a plea and information.

faulting his attorney for failing to file a motion to dismiss the complaint *with prejudice* for a violation of the STA.   Braverman's decisions to enter into continuances and decline to file an STA motion were well within his purview, as well as a reasonable and sound legal strategy in the overall context of Agarwal's case, and led to a favorable outcome for Agarwal.[2]   If Braverman had filed an STA motion, the court likely would have dismissed the case *without* prejudice. Dismissal with prejudice "is a harsh remedy that is generally not employed absent a showing of intentional misconduct or bad faith on the part of the government. *See United States v. Cabbera,* 2015 WL 260888 (D.N.J. Jan. 21, 2015), *citing United States v. Saltzman,* 984 F.2d 1087, 1093 (10th Cir. 1993); *Government of the Virgin Islands v. Francis*, 98 F.R.D. 626, 632 (D.V.I. 1983). Mere negligence by the government is not enough to warrant dismissal with prejudice. *Id.* at 4; *citing United States v. Cano-Silva* 402 F.3d 1031, 1036 (10th Cir. 2005).   Several other cases in the District of New Jersey have held that "dismissal with prejudice should be reserved for cases where there are regular and frequent indications of negligence, or evidence of an intent to delay with the purpose of gaining a strategic or tactical advantage." *United States v. Cox*, 2011 WL 5023499, at *11 (D.N.J. Oct. 19, 2011)(Linares, J.).   The Court in *Cabrera* noted that "it is not surprising that dismissals for violations of the Speedy Trial Act in this District are overwhelmingly without prejudice.  *Cabrera* at p. 5, *citing United States v. Perez*, 2014 WL 2581050 at p. 2 (D.N.J., June 6, 2014) (Cecchi, J.); *United States v. Hall*, 2014 WL 1744773 (D.N.J, May 1, 2014) (Wolfson, J.); *United States v. Arias-Ruiz*, 2009 WL 704168 at p.2 (D.N.J., March 16, 2009); *United States v. Pinkhasov*, 2009 WL 150669 at p. 1 (D.N.J, January 21, 2009 (Chesler, J.).

In this case, the charged conduct was very serious—Agarwal infiltrated two companies' systems covertly, accessing unauthorized information for over a year.   As the Government noted at sentencing, Agarwal's actions included physical trespassing on both these companies, and in an effort to evade law enforcement, a physical scuffle with a security official, stealing a car, and filing a false police report.   *See* Exhibit 1 at 74:21-75:3.   As the Government and counsel negotiated a plea, counsel continued to enter into and file with the Court "ends of justice" STA continuances—there is no allegation here that counsel was seriously deficient though more than 30 days counting towards the Speedy Trial

---

[2] Counsel has the authority to request or consent to the entry of "ends of justice" STA continuances with the Government without Agarwal's tacit agreement or authorization and the Court must be able to rely upon defense counsel's representations with respect to such continuances. *See United States v. Tulu*, 535 F. Supp. 2d 492 (D.N.J. 2008), citing *United States v. Fields*, 39 F. 3d 439, 443 (3d Cir. 1994); *United States v. Lattany*, 982 F.2d 866 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993); *United States v. Willis*, 958 F.2d 60, 63 (5th Cir. 1992); *United States v. Bryant*, 1998 WL 39393 (4th Cir. 1998) (unreported).   Therefore, the decision to bring an STA motion also falls into this bucket—as within the defense counsel's purview.

Clock likely accrued.  In circumstances such as these, where the alleged conduct is serious, with strong evidence, and without any specific misconduct or delay alleged, it would be unlikely for a court to grant a dismissal with prejudice.  And if the Court granted a dismissal at all, it likely would have been one without prejudice, which would not have improved Agarwal's negotiating posture.

Additionally, Agarwal was not in custody, but on pre-trial release living at home and he was permitted to work.  There is no set rule in the Third Circuit or this District concerning how many days of post arrest and pre-indictment delay would give rise to a presumption of prejudice weighing in favor of defendant on a motion to dismiss under the Speedy Trial Act.  But, violations of only a few days, without more, are routinely found not to give rise to any prejudice. *United States v. Hall*, 2014 WL 1744773 at *3 (D.NJ. May 1, 2014), *citing United v. Cox*, 553 Fed. Appx. 123, 129 (3d Cir. 2014); *Govt. of the V.I. v. Francis*, 98 F.R.D. 626, 631 (3d Cir. 1983).

Braverman's Declaration reveals a reasonable strategy for handling the case that was focused on negotiating a favorable plea agreement for Agarwal. *See* Exhibit 2 at ¶¶ 4-6, 8.  In formulating a defense strategy, defense counsel is permitted to "critically undertake a cost/benefit analysis of any proposed course of action." *See United States v. Rushin*, 642 F.3d 1299 (10th Cir. 2011).  In *Rushin*, the Tenth Circuit "categorically rejected any suggestion" that a defendant had "nothing to lose" in filing a motion to dismiss under the STA, holding that not every decision on the part of defense counsel to forego filing such a motion is suspect under the first prong of *Strickland*.  The Court noted that the defendant's counsel is in the unique position to "observe the relevant proceedings, knows of materials outside the record, and interacts with the client, with opposing counsel, and with the trial judge. It is all too tempting to "second guess counsel's assistance after conviction or adverse sentence."  The Court found that defense counsel has to determine what effect such a motion might have on negotiations with the government and on the District Court's view of the defendant.  *Rushin*, 642 F.3d at pp. 1307-1308.  The Court recognized that there is a temptation to "second-guess counsel's assistance after a conviction or adverse sentence," but counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all of the circumstances." *Id.*  Ultimately, Braverman's advocacy resulted in a sentence at the very bottom of the Guidelines range for Agarwal, over four years lower than the statutory maximum.  Therefore, Agarwal cannot show that Braverman provided him with ineffective assistance of counsel.

Braverman chose to continue in plea negotiations rather than filing a motion to dismiss based on a technical STA violation, knowing there was a strong likelihood that the complaint would be dismissed without prejudice.  *See* Exhibit

2 at ¶ 7.  But even if reasonable defense counsel should have taken that step, Agarwal cannot show a reasonable probability of a different outcome.  Indeed, a panel of the Third Circuit has concluded that defense counsel's failure to secure a without-prejudice dismissal under the Speedy Trial Act, without more, does not amount to *Strickland* prejudice.  *See United States v. Fowers*, 131 F. App'x 5, 6-7 (3d Cir. 2005).  Other Circuits agree. *See Sylvester v. United States*, 868 F.3d 503, 511-12 (6th Cir. 2017) ("Where the defendant has not demonstrated that ... the district court ... would have ordered dismissal of the prosecution with prejudice based on a Speedy Trial Act violation, he has not shown that counsels' deficient performance chang[ed] the result of the proceeding.") (unpublished); *United States v. McLendon*, 944 F.3d 255 (DC Cir. 2019); *United States v. Rushin*, 642 F.3d 1299, 1309-10 (10th Cir. 2011) (*citing Chambliss v. United States*, 384 F. App'x 897, 899 (11th Cir. 2010) (unpublished)); *United States v. Thomas*, 305 F. App'x 960, 964 (4th Cir. 2009) (unpublished); *United States v. Theurer*, 36 F.3d 1099, 1994 WL 420072, at 7 (7th Cir. Aug. 11, 1994) (unpublished table opinion); *Harvey v. United States*, 850 F.2d 388, 402-03 (8th Cir. 1988).

### B. Ekeland Was Not Ineffective for Failing to Find "Proper" Case Law Regarding Loss Calculations under the CFAA

In Ground 1 of his Motion, Agarwal faults appellate counsel, Ekeland, for failing to find—at least in his eyes—"proper" case law to support his appellate claims regarding loss calculations under the CFAA on direct appeal.  However, Agarwal cannot meet the first prong of the *Strickland* test with respect to this assertion because appellate strategy is within the discretion of appellate counsel.  As Ekeland explains in his Declaration, CFAA loss amounts often are calculated in the context of civil suits and there is limited criminal case law.  *See* Exhibit 3 at ¶ 6.  Ekeland raised issues on appeal supporting his arguments with the case law that was available to him.  Moreover, while the methodology for calculating CFAA loss was one piece of Ekeland's argument, the central argument was that Agarwal's plea was unknowing because the CFAA loss amount—according to Ekeland—was not reasonably foreseeable.  The Third Circuit addressed this argument and found that Agarwal acknowledged that the CFAA loss was disputed at his plea hearing and that his defense attorney argued in Agarwal's favor regarding the loss amount in his sentencing memorandum and at the sentencing hearing.  *See* D.E. 69 at 11-12.  The Court found that "[i]f Agarwal believed he had been misled after learning of the Government's loss calculations in the PSR, he could have—and should have—moved to withdraw his plea then, when he would have been required to present only a "fair and just reason" for withdrawal."  *See* D.E. 69 at 12.  Agarwal cannot claim ineffective assistance of counsel when Ekeland researched and utilized the case law that was available.[3]

---

[3] It is also worth noting that Agarwal's ineffectiveness claim would fail even if Ekeland had opted to not raise a claim regarding loss calculations under the CFAA on direct appeal.  In light of the sentence Ekeland received, the loss calculation claim would not have gotten Agarwal around the Third Circuit's

And Agarwal certainly cannot claim ineffective assistance of counsel just because he did not like the outcome of his direct appeal.

Furthermore, Agarwal cannot meet the second prong of the *Strickland* test because Agarwal cannot show prejudice. Ekeland did not provide ineffective assistance of counsel, and nothing he did prejudiced Agarwal. Ekeland made appellate arguments in Agarwal's interest, and moreover, there is no evidence that Ekeland's choices of the case law in support of his argument affected the Third Circuit's decision anyway. Moreover, despite the appellate waiver in Agarwal's plea agreement, Ekeland articulated a "fallback" position, requesting that the Court modify Agarwal's CFAA sentences, even though Agarwal had waived any right to appeal his sentence so long as the sentence fell within the statutory maximum term of imprisonment. While appellate counsel could not be faulted for excluding claims his client had specifically waived, Ekeland nevertheless attempted to make an argument for Agarwal's benefit. And certainly Agarwal has offered nothing to this Court showing that Ekeland somehow overlooked decisional law that would have led the Third Circuit to look past the appellate waiver and agree with Agarwal's sentencing argument.

### C. Counsel was Not Ineffective for Failing to Argue on Appeal Regarding Sentencing Enhancements Already Extensively Argued at Sentencing

Agarwal also takes issue with Ekeland's omission of certain arguments regarding two sentencing enhancements: in Ground 2, failure to argue regarding the application of a sentencing enhancement related to production of an unauthorized access device; and in Ground 3, failure to argue regarding the application of an enhancement for intent to obtain personal information. To allege ineffective assistance of counsel, a defendant must show that the omitted claim was so clearly meritorious that no reasonable counsel would have failed to assert it. *See Besser*, 2013 WL 308951 at *27 (W.D. Mich. Jan. 25, 2013) ("Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal."); c*f. see Scripps*, 961 F.3d at 634 (3d Cir. 2020) (remanding for evidentiary hearing because, "while it would be highly unusual for counsel to omit such a clearly

decision to enforce the appellate waiver in the plea agreement to preclude such claims. Appellate counsel may, as a sound strategic matter, choose not to bring claims barred by an appellate waiver provision in the plea agreement. *See Lawrence v. United States*, 2011 WL 1256608, at *2 (S.D. Fla. Apr. 1, 2011) (finding that the defendant signed a valid waiver of appellate rights which precluded an appeal "unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing," and finding that the defendant had not raised such grounds).

meritorious argument, nonetheless counsel may have had reasons for doing so.").

Not including every possible argument in an appeal is part of sound appellate strategy. *See Smith v. Murray*, 477 U.S. 527, 536 ("Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (cleaned up). Appellate counsel who files a merits brief need not, and should not, raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal; nonetheless, it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, though it is difficult to demonstrate that counsel was incompetent, and generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Here, it appears appellate counsel decided to focus on an issue related to a sentencing enhancement which added 16 offense levels to Agarwal's Guidelines base offense level. The two enhancements Agarwal faults Ekeland for ignoring each added 2 offense levels to his base offense level. Moreover, Your Honor entertained written and oral argument regarding these two enhancements at the sentencing stage, was ultimately unpersuaded by defense counsel Braverman's strenuous efforts, and decided to apply them. *See* Exhibit 1 at 42:1-44:3. Your Honor further noted that there were other enhancements that could have been applied that were not, to highlight the fact that "this is not an issue where every enhancement is attempted to be applied to Mr. Agarwal. There are other enhancements that clearly could apply and have not been applied." *See* Exhibit 1 at 44:10-13. Ekeland ultimately chose not to include every possible argument on appeal—which is not ineffective assistance of counsel, especially where an appellate waiver barred challenges to the sentence. *See* Exhibit 3 ¶¶ 8-9. Agarwal also knew that Ekeland was not raising these arguments—Ekeland regularly communicated with Agarwal regarding his appeal, including sending him drafts to review. See Exhibit 3 at ¶ 9. In sum, the decision to not include arguments relating to these enhancements was part of Ekeland's sound appellate strategy.

The test for prejudice under *Strickland* asks whether the Third Circuit likely would have reversed and remanded had the issue been raised on direct appeal. *See United States v. Mannino*, 212 F.3d 835 (3d Cir. 2000). Here, given the extensive record supporting the sentencing court's finding, it is unlikely that the Third Circuit would have reversed and remanded on these two sentencing enhancements. If Ekeland had raised an appellate argument regarding the applicability of the sentencing enhancements on appeal, the Third Circuit would have then reviewed "the District Court's interpretation of the Sentencing Guidelines de novo, and scrutinize any findings of fact for clear error." *United States v. Rodriguez*, 40 F.4th 117, 120 (3d Cir. 2022) (citing *United States v.*

*Kluger*, 722 F.3d 549, 555 (3d Cir. 2013) (quoting *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009)).  If "the legal issue decided by the district court is, in essence, a factual question," the District Court can "abuse[ ] its discretion in applying the enhancement based on a particular set of facts only if those facts were clearly erroneous." *Rodriguez*, 40 F.4th at 120 (3d Cir. 2022).  Here, both sentencing enhancements applied to Agarwal's Guidelines calculations by this Court at sentencing were factual issues.  The Third Circuit would generally accept fact determinations by the district court unless "that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000).  Given this, it is obvious why Ekeland chose not to pursue these appellate arguments, and Agarwal cannot show any prejudice from Ekeland's failure to raise such arguments.

### D. No Evidentiary Hearing is Necessary

Section 2255 provides that in an action to vacate or correct the sentence, the court shall grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and file and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  In such a case, a petitioner's factual allegations are to be considered in the light most favorable to him.  *See Arrington*, 13 F.4th at 334-335 (3d Cir. 2021); *United States v. Biberfeld*, 957 F.2d 98, 99 (3d Cir. 1992).  Nonetheless, "bald assertions and conclusory allegations do not provide sufficient ground to . . . require an evidentiary hearing." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).  In determining a petitioner's claim, a district court judge may properly refer to his or her own recollection of the prior proceedings.  *United States v. Lively*, 817 F. Supp. 453, 47 (D. Del.), aff'd 14 F.3d 50 (3d Cir. 1993).  A court's decision to deny a Section 2255 motion without a hearing is reviewed for abuse of discretion. *Id.*

If the movant's nonfrivolous claims clearly fail to demonstrate either deficiency of counsel's performance or prejudice to Agarwal, then the claims do not merit a hearing. *See Arrington*, 13 F.4th at 334-36, *citing Dawson*, 857 F.2d at 927-928 (3d Cir. 1988).  Under the facts of this case, it is clear that defense counsel's decision not to file a STA motion was a sound and reasonable strategic decision based on his view of the case and its posture at the time of the violation. The record is also clear that Agarwal knowingly waived his right to indictment in pursuing a resolution of his charges.  What is even more clear is that, even accepting the allegations in Agarwal's motion as true, Argawal can't show he was prejudiced by the failure to file a STA motion that would not have prevented the Government from re-filing the same charge in the complaint after dismissal and/or filing additional charges through an indictment that were not contained in the original complaint.

With respect to his claims against appellate counsel, Agarwal's complaints fall within the purview of appellate strategy.  Agarwal faults appellate counsel for not bringing the claim about CFAA calculations in a way acceptable to him, which is not a colorable 2255 claim.  Furthermore, Agarwal complains that appellate counsel failed to bring arguments regarding two sentencing enhancements.  The crafting of appellate strategy is within the discretion of appellate counsel, and even if the Court were to find fault with appellate counsel's strategic decisions, Agarwal cannot claim prejudice.  It does not appear that there was a reasonable probability that the outcome of his appeal would have been any different—it is clear from the Third Circuit's opinion that the panel found Agarwal's appellate waiver enforceable.  As the Third Circuit noted, Agarwal was sentenced more than four years less that the statutory maximum.

For all of these reasons, the Court should deny the § 2255 motion without an evidentiary hearing.  Agarwal has failed to demonstrate either unreasonable attorney performance or prejudice, much less both.

### E. This Court Should Deny a Certificate of Appealability

This Court also should decline to issue a certificate of appealability because Agarwal has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a certificate should issue only where defendant has shown "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"); *see also* Rule 11(a) of the Rules Governing Section 2255 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").

## IV.    Conclusion

For the foregoing reasons, the Government respectfully submits that this Court should deny Agarwal's § 2255 motion on the merits because Agarwal has not demonstrated that he is entitled to relief under *Strickland*, the Court should do so without an evidentiary hearing, and decline to issue a certificate of appealability.

Sincerely,

PHILIP R. SELLINGER
United States Attorney

By:   s/ Clara Kim
Clara Kim
Assistant United States Attorney

cc: Ankur Agarwal, *pro se* (by mail)
Reg. No. 71563-050
FCI Fort Dix
Federal Correctional Institution
Satellite Camp
P.O. Box 2000
Joint Base MDL, NJ 08640