**Exhibit 2**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANKUR AGARWAL, | : | |
| Petitioner | : | Hon. Susan D. Wigenton |
| | : | |
| v. | : | Civ. No. 23-2479 |
| | : | |
| UNITED STATES OF AMERICA, | : | Crim. No. 19-770 |
| Respondent | : | |

DECLARATION OF SAMUEL M. BRAVERMAN, ESQ.

Pursuant to 28 U.S.C. § 1746, Samuel M. Braverman, Esq., says:

1. I am an attorney duly admitted to practice law in New Jersey. I have been practicing law for more than 30 years. During my career, I have handled over 300 federal criminal cases, including more than 25 federal criminal trials. I have represented more than 4000 people accused of crimes, and tried more than 100 cases to verdict as sole or lead counsel. I have represented numerous clients facing charges under the Computer Fraud and Abuse Act (CFAA) and other similar charges.

2. I submit this Declaration in response to Petitioner Ankur Agarwal's ("Agarwal") motion to vacate his sentence pursuant to 28 U.S.C. § 2255 after the Court entered an order finding that Agarwal had waived his attorney client privilege by his filing his motion to vacate his sentence.

3. On or about May 8, 2018, I was retained to represent Agarwal in *United States v. Agarwal*, Crim. No. 19-770. I remained his counsel through his

guilty plea and sentencing.[1] Throughout his case, I remained in contact with Agarwal and discussed with him, among other things, the facts of his case, any possible defenses, his right to go to trial, his right to plead guilty and either stipulate to facts, stipulate to guidelines, or seek a *Fatico* hearing on disputed facts, as well as his potential sentencing exposure. We discussed types of plea agreements that might be available, what terms they would include and what defenses or arguments they would preclude. In total, I spent at least 240 hours on his federal matter.

4.  As Agarwal's attorney, in his best interest, I negotiated with the Government regarding a plea agreement for scores of hours. At each stage of the negotiations, I spent time reviewing the plea terms in great detail with Agarwal, and then going back and forth with the Government and Agarwal with more requests while negotiating the plea resolution.

5.  Although for part of my representation Agarwal indicated that he wished to go to trial, after much discussion he concluded that his best strategy would be to negotiate a plea agreement to limit his criminal exposure and receive the benefit of "acceptance of responsibility" mitigation under the Guidelines. At this point in plea negotiations and my representation of Agarwal, I understood Agarwal's intention was to plead to his charges contained in the complaint to

---

[1] I was also his retained counsel on his state matter *State of New Jersey v. Ankur Agarwal,* Case No. W 2018 000040 1801, which charged Petitioner with burglary related to his alleged entry into the property at the center of the federal matter. Through discussions with the state prosecutor and because of the federal guilty plea, I was able to persuade the state in June, 2019, to dismiss its complaint as essentially covered by the proposed federal guilty plea I was seeking to achieve. The state did dismiss its complaint without prejudice pending the outcome of the federal negotiations, and after the sentencing in the federal matter, the state was satisfied and did not seek to reinstate its charges.

2

resolve his case. Agarwal and I participated in a "show and tell" reverse proffer session with the Government on July 31, 2018 for several hours and it was clear that Agarwal would lose if he proceeded to trial. Nonetheless, I spent countless hours researching jury instructions after that proffer to explain the law to Agarwal, as well as meet with him in person and by telephone to discuss what potential trial strategies could be investigated and what were the factual and legal impediments to their success. In furtherance of a plea, Agarwal and I met with the Government on several occasions (several proffers and two polygraph evaluations), and I had numerous other phone conversations to discuss the terms of the plea.

6. Agarwal never asked me to ask the Government for an indictment during the 14 months of plea negotiations. In fact, on June 4, 2019, my notes indicate that I specifically discussed the use of an information compared to a grand jury indictment and the requirement to waive a grand jury indictment to use an information, the lack of significant differences between the two, and the use of informations in this district in plea agreements. Further, I sent Agarwal the Rule 11 Change of Plea allocution used in this district on October 14, 2019, and Agarwal and I prepared the Rule 11 Change of Plea allocution together on October 20, 2019, (which includes a discussion of the right to a grand jury indictment and the significance of a waiver of indictment (¶¶ 8-14).) Agarwal indicated to me that he understood all the terms in the form, including the language at ¶¶ 8-14. I then met with Agarwal at the Courthouse on October 22, 2019, prior to the court appearance and reviewed in person all the forms required

3

for the change of plea, answered all Agarwal's questions, and he was satisfied that he understood all the relevant forms (including the waiver of indictment). Once Agarwal and the Government entered into a plea agreement, I advised Agarwal to sign the waiver of indictment in open court so that he could enter his plea with the Court. Finally, this Court allocuted Agarwal on the right to a grand jury indictment and the waiver of indictment and Agarwal swore under oath that he understood his right to an indictment and waived that right.

7. It never occurred to me to file a Speedy Trial Act ("STA") motion for dismissal of the complaint. While I did not specifically discuss this issue with my client, I was aware that the Court would likely not grant a motion for dismissal with prejudice based on STA violations, and that the Court would permit the Government to re-file the same charges in new pleadings. As this outcome did not benefit Agarwal in the slightest, I saw absolutely no benefit to seeking relief pursuant to the STA and viewed any such litigation strategy as frivolous at best, and at worst detrimental to Agarwal's interests. The Government and I were in constant communications regarding reaching a plea, and I thought we would be able to reach a resolution beneficial for Agarwal.

8. Agarwal was at all times aware of my negotiations with the Government regarding his potential plea agreement. Prior to October 19, 2019, when the plea hearing was held, I had been in discussions with the Government regarding plea terms for a period of about 14 months. During this period, I was in regular communications with Agarwal, nearly weekly, often daily, and sometime hourly regarding the specifics of the plea agreement. I met with him in

person, sometimes twice in one day. During the period of representation, I exchanged with him, his family, the Government, pretrial services, or the probation department more than 800 emails. As a result, I continually agreed and consented to STA extensions to facilitate the negotiations of a favorable plea agreement, which served Agarwal's interests and qualified as good cause to extend the STA deadlines as "ends of justice" continuances.

9. I provided Agarwal a copy of the docket sheet from time to time, as well as copies of the continuances, so he was aware of the STA "ends of justice" continuances. I recall Agarwal to be a meticulous reader of any document I sent him, and he invariably wrote me back, or called me back, with a host of questions regarding documents or information that I provided to him.

10. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: September 25, 2023

*s/ Sam Braverman*
SAMUEL M. BRAVERMAN, ESQ.